M. P. STURDIVANT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47105.   Promulgated August 31, 1931.

*Robert Ash, Esq.*, and *William B. Jones, C. P. A.*, for the petitioner.

*O. J. Tall, Esq.*, and *J. M. Newton, Esq.*, for the respondent.

1388

OPINION.

Murdock: There is no issue relating to the years 1922, 1923, or 1926, and the deficiencies determined for those years are approved. The parties agree as to the amount of the loss and as to the year in which it was sustained. Counsel for the petitioner admitted at the hearing that $13,650, the cost of the original 273 shares of stock pur-

chased by the petitioner prior to 1922, was a capital loss. In his brief he argues that, since capital loss means a loss resulting from "the sale or exchange" of the assets, there was no such loss in the present case because the stock was not sold or exchanged, but was determined to be worthless in 1925. He cites a number of Board cases holding that the cost of worthless stock is an allowable deduction, and he cites also I.T. 2149, C.B. IV–1, p. 36, for holding that it is not a capital loss. This argument, if sound—a question which we do not determine, would not benefit the petitioner. In computing the loss, allowed as a capital net loss in 1925, the Commissioner has included the original cost of the 273 shares of stock owned by the petitioner prior to 1920. He has not asked the Board to disallow the cost of this stock as a loss in 1925 or to increase the deficiency in any way. But if the cost of this stock is to be allowed as a loss when the stock actually became worthless, it is not a loss in 1925, for the stock became worthless prior to that year.

At the time the petitioner paid the $25,000, he already owned more than half of the outstanding stock of this bank. It is stipulated that the bank examiner directed that a stock assessment of 100 per cent be made upon the stockholders, and in order to meet this demand the petitioner and Buford each paid $25,000. This $25,000 seems to us to represent additional cost of the stock already owned so far as this petitioner is concerned and as to that the petitioner is not entitled to any relief in this proceeding.

Under the circumstances, we think the only real issue in the case is whether $56,405, the remainder of the loss allowed by the Commissioner as a capital net loss, was or was not a capital net loss within the meaning of section 208 of the Revenue Act of 1926 which provides, " The term ' capital loss ' means deductible loss resulting from the sale or exchange of capital assets " and " the term ' capital assets ' means property held by the taxpayer for more than two years." In 1922 the petitioner advanced $110,400 to the bank so that the bank might pay the amounts owed to city correspondents and liquidate. One good and sufficient reason for the petitioner making this payment was that he had guaranteed, both orally and in writing, the credit advanced by the city banks to the People's Bank. His reasons for making the guarantee are fully set forth in our findings of fact. This was a transaction entered into for profit. The loss which resulted, in the amount of $56,405, was an ordinary loss under section 214 as opposed to a capital loss under section 208.

*Judgment will be entered under Rule 50.*